THE STATE, use of BLACKISTONE *vs* BLACKISTONE.—June, 1828.

In an action on a testamentary bond, a plea that since the last continuance of the cause, the orphans court of the county, which granted the letters testamentary, had revoked them, is no bar to the plaintiff's right of recovery.

Where letters testamentary or of administration have been revoked pending the suit, the delinquent executor or administrator, is deprived of no honest defence which should be made to the action.

If no assets have come to his hands—if he has administered them—if preferred creditors will consume the whole estate—if he has satisfied the claim, or on any ground it be unfounded in law or fact, it may be pleaded in bar of the action.

If there be other debts outstanding, or paid, or if the property of the deceased has, under the order of the orphans court, been delivered over to a new administrator, it may be pleaded, not as a complete bar to any recovery, but it will confine the plaintiff to nominal damages, or such other damages as a court and jury, under all the circumstances of the case, shall think him entitled to recover; but if no new administrator has been appointed, judgment should be rendered as if the letters testamentary had not been revoked.

APPEAL from *Saint-Mary's* County Court. This was an action of debt, brought on the testamentary bond entered into on the estate of *Kenelm Blackistone,* by his executor *Dent Blackistone,* the defendant, (now appellee,) on the 8th of February 1821. The defendant pleaded general performance. To which the plaintiff replied, that *Kenelm Blackistone* departed this life, leaving his wife *Juliet,* and seven children, having before his death made his will, dated the 12th of January 1821, whereby he devised a part of his property to his wife in lieu of dower, and bequeathed the rest to his seven children, viz. *Nathaniel, Charles C, Stephen, Ferdinand, Edwin, Gustavus* and *Madrid,* to be equally divided amongst them; one of which said children is *Charles C. Blackistone,* at whose instance and for whose use this suit was instituted. That the defendant was appointed executor by the said will, to whom letters testamentary were granted, and gave bond, &c. That he returned an inventory of the said estate, amounting to $1077 36. That the said executor under the said will, sold *St. Catharine's Island* for $3000, which by the said will was to be divided amongst the said seven children of the testator. That *N. Blackistone,* one of the children, agreeably to the will of his father, elected to take Lot No. 1, 50 acres, at $12 per acre, for which he gave

his bond to the executor, and which said sum of money was to be divided among the said seven children; and that the executor had received money belonging to the said estate to the amount of $2000, which also was to be distributed    That the executor had made payments and disbursements to the amount of ——, which deducted left a balance due to *Charles C. Blackistone,* (at whose instance and for whose use this action was brought,) of $800, which the plaintiff averred the executor had not paid, &c.   The defendant rejoined, "that after the last continuance of this cause, and before, &c. to which day this cause was last continued, and before this day, to wit, on the 1st of July last at, &c. the orphans court in and for the said county revoked the letters testamentary heretofore granted to him on the estate of *Kenelm Blackistone.*"   To this rejoinder the plaintiff demurred generally; and the defendant joined in demurrer.   The county court overruled the demurrer, and gave judgment for the defendant; from which judgment the plaintiff appealed to this court.

The cause was argued before BUCHANAN, Ch. J. and ARCHER, and DORSEY, J.

*Ashton,* for the Appellant.   The demurrer by the plaintiff to the defendant's rejoinder admits the truth of the matter rejoined, so far only as it is well pleaded.   Two questions, therefore, arise.   1. Whether the matter of the rejoinder, if well pleaded, was sufficient in law to bar the plaintiff's recovery?   2. Was that matter well pleaded?

1. As to the *first point.*   It is a common law right, that when any defendant comes into court, and by pleading admits the jurisdiction of the court, and the right of the plaintiff to sue, the plaintiff may recover from the defendant, whatever the defendant was bound to pay him at the time of bringing the suit, unless some disability supervene upon the plaintiff to recover, or the defendant discharge the obligation by performance.   Now this being a common law right, can the plaintiff be divested of that right by statute, unless the statute take away the right in direct and positive terms, or in like manner discharge the defendant from the obligation?   Would not the proper course have been to suffer the plaintiff to proceed with his suit, let

the defendant plead *plene administravit*, or the fact here plead-ed, when the plaintiff obtaining a judgment for his proportion of assets, might go on by *scire facias* against the successor?

2. On the *second point*, it is contended, that if the matter pleaded were sufficient in law, yet, that it was not well plead-ed, and therefore is not admitted by the demurrer. This plea is like a plea in abatement, and, as in such plea it is necessary for the defendant always to give the plaintiff notice of who is the proper party to be sued, and in what jurisdiction, the plea in this instance cannot be held sufficient without such designa-tion. Again, every plea which depends upon the judgment of a court of record, should conclude with a profert of the record, or a reference to it. A plea, therefore, that the letters testa-mentary of the defendant had been revoked by the judgment of the orphans court, without the production of, or a reference to the record, was defective, because the plaintiff could not plead, that there was no such record, nor find out what record was intended by the defendant; and the fact whether the court had made such a judgment, not being a matter susceptible of proof by matter *in pais*, the plaintiff could not plead any re-plication to that plea. But the judgment of the court is further objected to on the ground, that the plea, on which the judgment of the court below was founded, was a plea a departure from a plea previously pleaded by the defendant. The plaintiff de-clared upon the defendant's testamentary bond; the defendant prayed oyer of that bond, and set it out in his pleading, and pleaded, that he had always done and performed every thing he was bound to do and perform in virtue of his obligation con-tracted by that bond. Now can it be said that the plea, *puis darrein continuance*, here pleaded, supported or stood by that plea? On the contrary, is it not plainly and manifestly, either an excuse or justification for not doing what he had before al-leged in his plea had already been done, which is a departure?

C. *Dorsey*, for the Appellee, referred to the act of 1798, ch. 101, *sub ch.* 6, s. 13, and contended, that the revocation of the letters testamentary by the orphans court discharged the de-fendant from all obligations growing out of his testamentary bond, except to his successor; and was therefore a legal ground for him to plead that fact *puis darrein continuance.*

DORSEY, J. delivered the opinion of the Court.    The only question which we are called on to consider is, were the court below right, under the circumstances presented by the record in this case, in determining that the plea *puis darrein continuance*, simply stating that the letters testamentary had been revoked, was a bar to the plaintiff's right of recovery?

The letters testamentary were granted in February 1821, the present action was commenced in February 1824, and the revocation of the letters took place sometime between the months of March and August 1827—upon what grounds, does not appear.    The plea does not set forth the appointment of an administrator *de bonis non*, much less, that agreeably to the acts of assembly in such case provided, all the unadministered estate of the deceased has, under the order of the orphans court, been delivered over to such substituted administrator.    Under such circumstances, we think the court erred in overruling the demurrer to the defendant's plea.    At the time of the institution of the suit, the equitable plaintiff had a good cause of action, the bond of the defendant had become forfeited by his failure to distribute the unadministered effects of the deceased, as required by law.    Should he then, by refusing to settle his accounts with the orphans court, or to give additional security when called on for that purpose, (thus adding default to default,) be permitted, after involving the equitable plaintiff in litigation for three years, to turn him out of court, burthened, not only with his own costs, but with the costs of the defendant also? No principle of law enjoins it; reason and justice forbid it.    If the doctrine were sanctioned, it would be in the power of executors or administrators, dishonestly disposed, to withhold the effects of the deceased from the payment of his debts, suffer themselves to be sued by the creditors; and after exhausting all the delay and indulgence which the law extends to them, by their own delinquency to cause a revocation of the letters testamentary or of administration, and thus dismiss the creditors from court, mulcted not only with all their costs, rightfully incurred in the prosecution of their just claims, but with the costs too of the defendant, the defaulter.    And they must then wait until a new administrator be appointed, and the estate of the deceased recovered, by suits on the old testamentary or ad-

ministration bond, or otherwise; when perhaps, this new administrator, encouraged by the successful devices and rewarded delinquencies of his predecessor, may be tempted to tread in his footsteps, to the ruin of the creditors and distributees. For such an anomaly in the law, such an outrage upon justice, as would be produced by the recognition of the doctrine contended for, no satisfactory reason can be assigned. By establishing a contrary doctrine, no injustice, no inconvenience or hardship, of which he has a right to complain, will be done to the delinquent executor or administrator. He is deprived of no honest defence which should be made to the action. If no assets have come to his hands—if he has administered them—if preferred creditors will consume the whole estate—if he has satisfied the claim, or on any ground it be unfounded in law or fact, it may be pleaded in bar of the action. If there be other debts outstanding or paid, or if the property of the deceased has, under the order of the orphans court, been delivered over to a new administrator, it may be pleaded, not as a complete bar to any recovery, but it will confine the plaintiff to nominal damages, or such other damages as a court and jury, under all the circumstances of the case, shall think him entitled to recover. But if, as in the present case, no new administrator has been appointed, judgment should be rendered as if the letters testamentary had not been revoked.

ARCHER, J. dissented.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.